

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JALILAH OTTO | Case Number: 1816-CV05589 |
|---|---|
| Plaintiff/Petitioner:<br>JOSHUA CARTER<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>CHRISTOPHER STEVEN DOVE<br>DRZ LAW, LLC<br>9229 WARD PARKWAY, SUTIE 370<br>KANSAS CITY, MO 64114 |
| Defendant/Respondent:<br>CURATORS OF THE UNIVERSITY OF MISSOURI | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: STEVEN KANTER, M.D.
Alias:
UMKC SCHOOL OF MEDICINE
615 E. 52ND STREET
KANSAS CITY, MO 64110

**PRIVATE PROCESS SERVER**

*COURT SEAL OF JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

17-APR-2018
Date                                    Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server      Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

(Seal)   Subscribed and sworn to before me on _____ (date).

My commission expires: _____
Date                                    Notary Public

**Sheriff's Fees**
Summons         $_____
Non Est         $_____
Sheriff's Deputy Salary
Supplemental Surcharge   $ 10.00
Mileage         $_____ ( _____ miles @ $_____ per mile)
Total           $_____

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (2-2017) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 18-SMCC-3813  1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:18-cv-00426-RK   Document 1-1   Filed 06/01/18   Page 1 of 19



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>JALILAH OTTO | Case Number: 1816-CV05589 |
|---|---|
| Plaintiff/Petitioner:<br>JOSHUA CARTER<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>CHRISTOPHER STEVEN DOVE<br>DRZ LAW, LLC<br>9229 WARD PARKWAY, SUTIE 370<br>KANSAS CITY, MO 64114 |
| Defendant/Respondent:<br>CURATORS OF THE UNIVERSITY OF MISSOURI | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: CARY CHELLADURAI
Alias:
UMKC SCHOOL OF MEDICINE
615 E. 52ND STREET
KANSAS CITY, MO 64110

**PRIVATE PROCESS SERVER**



*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

17-APR-2018
Date _____ Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____ _____
Printed Name of Sheriff or Server       Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____ _____
                                   Date                Notary Public

**Sheriff's Fees**
Summons              $_____
Non Est              $_____
Sheriff's Deputy Salary
Supplemental Surcharge  $  10.00
Mileage              $_____ ( _____ miles @ $._____ per mile)
Total                $_____
A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (2-2017) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 18-SMCC-3811** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:18-cv-00426-RK   Document 1-1   Filed 06/01/18   Page 2 of 19



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division: | Case Number: 1816-CV05589 |
|---|---|
| JALILAH OTTO | |
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address |
| JOSHUA CARTER | CHRISTOPHER STEVEN DOVE |
| | DRZ LAW, LLC |
| | 9229 WARD PARKWAY, SUTIE 370 |
| vs. | KANSAS CITY, MO 64114 |
| Defendant/Respondent: | Court Address: |
| CURATORS OF THE UNIVERSITY OF | 415 E 12th |
| MISSOURI | KANSAS CITY, MO 64106 |
| Nature of Suit: | |
| CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: KRISTEN KLEFFNER
Alias:
UMKC SCHOOLD MEDICINE
615 E. 52ND STREET
KANSAS CITY, MO 64110

**PRIVATE PROCESS SERVER**



*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

17-APR-2018
Date _____ Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____        _____
                              Date                Notary Public

**Sheriff's Fees**
Summons                        $ _____
Non Est                        $ _____
Sheriff's Deputy Salary
Supplemental Surcharge         $   10.00
Mileage                        $ _____ ( _____ miles @ $. _____ per mile)
Total                          $ _____

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (2-2017) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 18-SMCC-3812** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:18-cv-00426-RK   Document 1-1   Filed 06/01/18   Page 3 of 19

Electronically Filed - Jackson - Kansas City - March 30, 2018 - 05:35 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| JOSHUA CARTER )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE CURATORS OF THE )<br>UNIVERSITY OF MISSOURI )<br>Serve: )<br>Secretary of the Board of Curators of )<br>the University of Missouri )<br>5100 Rockhill Rd )<br>Kansas City, MO 64110 )<br>)<br>and )<br>)<br>Steven Kanter, M.D., George Harris, M.D. )<br>Cary Chelladurai, and Kristen Kleffner, )<br>in their individual and official capacities )<br>Serve: )<br>UMKC School of Medicine )<br>615 E. 52nd Street )<br>Kansas City, MO 64110 )<br>)<br>Defendants. ) | Case No. 1816-CV05589<br>Division 15 |

## FIRST AMENDED PETITION

COMES NOW Plaintiff, Joshua Carter, who states and alleges as follows for his First Amended Petition against Defendants:

### INTRODUCTION

1. UMKC, through its School of Medicine, offers a B.A./M.D. program that allows a student to obtain an undergraduate and medical degree after six years of study (the "Program").

2. Students enrolled in the Program must incur costs for tuition, fees, room and board, books, supplies, and other expenses. Tuition alone can average over $25,000 a year.

3. The Program accepts students straight from high school or freshman year of college. Students take undergraduate and medical school classes and work in docent groups in hospitals learning how to provide care for patients.

4. Plaintiff Josh Carter enrolled in and began the Program as a student.

5. Over the time that Josh Carter was a student in the Program, one or more Defendants engaged in actions designed to require Josh Carter to pay tuition, fees, expenses, and costs above and beyond what he would pay for the six years to complete the Program.

6. In particular, one or more Defendants, in violation of policies, required Josh Carter to enter the Alternate Curriculum Pathway and repeat Year 1 of the Program. By forcing Josh Carter into the Alternate Curriculum Pathway, Defendants were able to enroll another student in Josh Carter's "spot," enabling UMKC to collect double tuition, fees, expenses, and costs.

7. During Year 2 of the Program, Defendants also required Josh Carter to take science courses but did not count the grades he earned toward his science-specific grade point average. As a result Defendants told Josh Carter that his science-specific grade point average was not high enough and that he would have to repeat Year 2 of the Program.

8. Defendants also required Josh Carter to take biology courses that they knew would not count toward a biology undergraduate degree and would not count toward a BLA degree, meaning he would have to take additional courses to obtain a degree.

9. Now, despite charging medical school tuition, Defendants improperly categorize the medical school courses Josh Carter completed as undergraduate courses. Consequently,

other academic programs will not admit Josh Carter because his transcript does not properly reflect his grade point average or academic level of the courses he completed.

10. On information and belief, Defendants violate policies and impose requirements to students in the Program in order to make them retake courses in order to obtain additional funds from the students in the form of tuition and fees.

**PARTIES**

11. Plaintiff Joshua Carter at all times relevant to the allegations in this Petition was a student in the School of Medicine at the University of Missouri-Kansas City ("UMKC).

12. UMKC is part of the University of Missouri school system and is a Missouri public institution of higher education created by statutes of the State of Missouri and governed by Defendant, the Curators of the University of Missouri.

13. Defendant Steven Kanter, M.D., was the Dean of the School of Medicine during the events alleged herein, and is being named in an individual and official capacity. On information and belief, Defendant Kanter was aware of or put in place the actions of other Defendants violating policies and requiring Plaintiff and other students in the Program to retake and take additional courses.

14. Defendant George Harris, M.D. was the Assistant Dean Year 1 and 2 Medicine at UMKC and during the events alleged herein, and is being named in an individual and official capacity.

15. Defendant Cary Chelladurai was an Advisor for Year 1 and 2 medical students and then Manager of Student Affairs at UMKC and during the events alleged herein, and is being named in an individual and official capacity.

3

16. Defendant Kristen Kleffner was Senior Education Team Coordinator for Year 1 and 2 medical students at UMKC and during the events alleged herein, and is being named in an individual and official capacity.

## JURISDICTION AND VENUE

17. All of the acts, conduct, and omissions of UMKC, which is located in Jackson County, was performed by its agents, representatives, and employees acting while in the course and scope of their agency or employment in Jackson County, Missouri, and accordingly, jurisdiction and venue are proper in this Court.

## FACTUAL BACKGROUND

### According to UMKC's Policies, Joshua Carter Successfully Completed Year 1 of the Program

18. Plaintiff Joshua Carter enrolled at UMKC and took 22 credit hours in the first semester and 14 credit hours in the second semester of Year 1 of the Program.

19. UMKC represents that Year 1 of the Program ends in May of the first year.

20. Joshua Carter completed Year 1 of the Program in May of the first year.

21. Joshua Carter met the requirements to advance to Year 2 of the Program.

22. Joshua Carter completed all coursework in Year 1 with grades sufficient to advance to Year 2 of the Program.

23. Joshua Carter finished Year 1 in the top 5% of his class for docent work at the hospital. He also was also elected class President.

### According to UMKC Policies, Only a Year 1 Student Can Be Required to Enter the Alternate Curriculum Pathway and Repeat the First Year of the Program

24. UMKC represents that, during Year 1 of the Program, if a student does not achieve a grade of C- or above, then the student must re-take the entirety of Year 1 of the Program.

4

25. UMKC represents that if a Year 1 student does not achieve an acceptable grade then the student must enter the Alternate Curriculum Pathway.

26. UMKC represents that, during Year 2 of the Program, if a student does not achieve a grade of C- or above, then the student must re-take the course and achieve an acceptable grade during Year 2.

### Against UMKC's Policies, Joshua Carter Was Required to Enter the Alternate Curriculum Pathway And Repeat the Entire Year 1 of the Program

27. In June, Joshua Carter started Year 2 of the Program.

28. During the summer session of Year 2 of the Program, Joshua Carter took Cell Biology and Accelerated Organic Chemistry.

29. Joshua Carter did not achieve a grade of C- or above in the Cell Biology course.

30. UMKC represents that, during Year 2 of the Program, if a student does not achieve a grade of C- or above, then the student must re-take the course and achieve an acceptable grade during Year 2.

31. According to UMKC policies, Joshua Carter should only have been required to re-take Cell Biology during Year 2 and achieve an acceptable grade.

32. Defendants nevertheless required Joshua Carter to re-do Year 1 through the Alternate Curriculum Pathway.

33. UMKC, through Cary Chelladurai and Dr. Harris, told Joshua Carter that the only way he would be permitted to stay in the medical school is if he entered the Alternate Curriculum Pathway.

34. Joshua Carter therefore incurred an additional year of tuition payments and costs.

35. Students in the Alternate Curriculum Pathway are in an academic probation status.

36. Students in the Alternate Curriculum Pathway also are prohibited from holding office, resulting in Joshua Carter losing his role as President of his class.

37. Students in the Alternate Curriculum Pathway must take classes selected by UMKC.

38. Students in the Alternate Curriculum Pathway require seven years to complete the Program rather than six years.

39. Students in the Alternate Curriculum Pathway are prohibited for participating in research opportunities and other extracurricular activities.

40. Students in the Alternate Curriculum Pathway are required to leave their original docent group and assigned to a new docent group of other students in the Alternate Curriculum Pathway.

41. For students re-assigned to the Alternate Curriculum Pathway, a letter is put into their file stating they have been placed into the Pathway. The letter is sent to prospective residency programs when the student applies.

### UMKC Required Joshua Carter to Take Specific Courses But Did Not Give Him Grade Credit Toward His Science GPA

42. When Joshua Carter entered the Alternate Curriculum Pathway, UMKC required him to take a number of biology courses.

43. UMKC represented that the science courses UMKC required him to take while in the Alternate Curriculum Pathway would count toward his science grade point average.

44. Joshua Carter completed the first year, which was three semesters, of the Alternate Curriculum Pathway with a grade of A in every course.

45. Joshua Carter re-took Cell Biology, obtaining an A, the highest grade available.

46. UMKC also required Joshua Carter to retake Anatomy, although he has already passed that course.

47. But then UMKC informed Joshua Carter that the biology courses UMKC required him to take would not count toward his medical school science grade point average.

48. UMKC, through Kristen Kleffner, refused to give Joshua Carter a full replacement grade credit for getting an A in the Anatomy course that they made him retake.

49. Joshua Carter's science grade point average was not revised to include the grades he received in the biology courses.

50. UMKC represented to Joshua Carter that the Anatomy course and Cell Biology he retook would replace the grade he received the first time he took the course. But, instead, UMKC averaged the two grades.

51. During Year 2, Joshua Carter took the Clinical Correlations course.

52. The Clinical Correlations course is listed as a Year 2 course that counts toward the science grade point average.

53. Joshua Carter's science grade point average was not revised to include the grade he earned in the Clinical Correlations course.

54. As a result of Defendants' refusal to give Joshua Carter grade credit for the Clinical Correlations course and the biology courses, his science grade point average at the end of Year 2 was below a 2.8.

55. As a result of Defendants' refusal to give Joshua Carter full replacement grade credit for the Anatomy and Cell Biology courses, his overall GPA was lower.

56. Joshua Carter was told that, as a result of his science grade point average, he would have to make a request to re-do the entirety of Year 2 or else leave the Program.

### UMKC Required Joshua Carter to Take Specific Courses That Did Not Count Toward a Biology Undergraduate Degree

57. According to UMKC policy, students re-assigned to the Alternate Curriculum Pathway are required to get an undergraduate degree in either Biology or Chemistry.

58. When Joshua Carter entered the Alternate Curriculum Pathway, UMKC required him to take a number of biology courses.

59. Based upon representations by UMKC, through Ms. Kleffner and Ms. Chelladurai, Joshua Carter believed he was on track to obtain an undergraduate degree in Biology.

60. Instead, Joshua Carter was informed that the biology courses he had been required to take would not count toward an undergraduate degree in Biology.

61. UMKC, through Ms. Kleffner and Dr. Harris, told Joshua Carter that he would be required to obtain his undergraduate degree in Liberal Arts, while still being required to take biology courses.

62. In fact, Joshua Carter pointed out that multiple biology courses that UMKC was directing him to take would not count toward an undergraduate degree in Biology or toward a BLA degree. Without disagreeing with the fact that the courses would not count, Dr. Harris informed him that he would have to take whatever course he told him to take.

63. UMKC did not allow Joshua Carter to enroll in the Biology courses that would count toward an undergraduate degree in Biology, BLA degree or medical degree.

### UMKC Refuses to Release a Complete and Accurate Transcript, Preventing Joshua Carter From Enrolling in Another Educational Program

64. Joshua Carter has attempted to enroll in other academic programs.

65. The Program at UMKC comprises both undergraduate and medical school classes.

66. While a student in the Program, Joshua Carter took both undergraduate and graduate-level medical school classes.

67. UMKC's policy states that it will issue separate transcripts for undergraduate and graduate school courses.

68. In the transcript UMKC has released for Joshua Carter, it categorizes all the courses that Joshua Carter completed as undergraduate courses.

69. In the transcript UMKC has released for Joshua Carter, it refuses to categorize the medical school courses that Joshua Carter completed as medical school or graduate level courses.

70. In the transcript UMKC has released for Joshua Carter, UMKC has not computed a different undergraduate and medical/graduate school grade point average for the courses he completed.

71. As a result, Joshua Carter's undergraduate grade point average is lower than it would be if the grades for the medical/graduate courses were computed separately.

72. As a result, other academic programs have refused to admit Joshua Carter because the transcripts UMKC has released do not accurately reflect his grade point average and the academic level of the courses he has completed.

## COUNT I
### Violation of the RICO Act, 18 U.S.C. §§ 1961-1968
**(Against Defendants Steven Kanter, M.D, George Harris M.D., Cary Chelladurai, and Kristen Kleffner)**

73. Plaintiff re-alleges and incorporates as if fully set forth herein the paragraphs above.

74. Plaintiff and Defendants Kanter, Harris, Chelladurai, and Kleffner are "persons," as that that term is defined in 18 U.S.C. §§ 1961(3) and 1962(d).

75. The enterprise is UMKC, a legal entity, used by Defendants Kanter, Harris, Chelladurai, and Kleffner as the enterprise to execute a scheme to defraud.

76. The enterprise is separate and distinct from Defendants Kanter, Harris, Chelladurai, and Kleffner because UMKC is an entity with different rights and responsibilities from Defendants Kanter, Harris, Chelladurai, and Kleffner, who are natural persons.

77. At all relevant times, the enterprise was engaged in and its activities affected interstate commerce including through payments received by Plaintiff and other persons and entities by wire, through email communications, and through marketing and operations across state lines for purposes of doing business and marketing to students and potential students.

78. At all relevant times, in violation of 18 U.S.C. § 1962(c), Defendants Kanter, Harris, Chelladurai, and Kleffner used the enterprise as a means to commit a pattern of racketeering activity.

79. Defendants Kanter, Harris, Chelladurai, and Kleffner have conducted the affairs of the enterprise and participated in the operation and management thereof at least through directing Josh Carter to enter the Alternative Curriculum Pathway and repeat Year 1 of the Program, requiring Josh Carter to take specific science courses that did not count toward the science-specific grade point average, refusing to allow Josh Carter to have the grade for Antomy replaced, refusing to count the Clinical Correlations course toward his science grade point average, and requiring Josh Carter to take biology courses that did not count toward a biology or BLA degree.

80. The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

81. Defendants Kanter, Harris, Chelladurai, and Kleffner engaged in a willful and intentional scheme with knowledge to repeat Year 1 of the Program, take courses that did not count toward science grade point average or an undergraduate degree, refuse to give him grade credit for grades received in certain courses as a means to make Josh Carter take additional coursework, incurring additional tuition, costs, and fees.

82. Defendants Kanter, Harris, Chelladurai, and Kleffner engaged in this conduct through fraudulent and deceptive communications and invoices for tuition, costs, and fees sent by mail or wire.

83. It was reasonably foreseeable to Defendants Kanter, Harris, Chelladurai, and Kleffner that the mails and/or wires would be used in furtherance of the scheme, and the mails and/or wires were in fact used to further and execute the scheme.

84. Each mailing and each email constitutes a separate act of mail or wire fraud.

85. Defendants Kanter, Harris, Chelladurai, and Kleffner participated in the scheme to defraud knowingly, willfully, and with a specific intent to defraud Plaintiff into bearing the cost of additional tuition, costs, and fees.

86. The predicate acts of mail and wire fraud constitute a pattern of racketeering and activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events, but were related acts aimed at the common purpose and goal of defrauding Plaintiff, making him pay more for tuition, costs, and fees.

87. Defendants Kanter, Harris, Chelladurai, and Kleffner's actions toward Plaintiff were consistent with and a continuation of actions toward other prior and current students in the

Program aimed at the common purpose and with the goal of defrauding such students by making them repeat courses and academic years, resulting them paying more for tuition, costs, and fees.

88. As a direct and proximate result of Defendants Kanter, Harris, Chelladurai, and Kleffner's violations of 18 U.S.C. § 1962, Plaintiff has been injured in his business or property.

89. Under the provisions of 18 U.S.C. § 1964(c), Defendants Kanter, Harris, Chelladurai, and Kleffner are liable to Plaintiff for three times the damages sustained, plus costs and reasonable attorneys' fees.

## COUNT II
### Violation of the Missouri Merchandising Practices Act Against All Defendants

90. Plaintiff re-alleges and incorporates as if fully set forth herein the paragraphs above.

91. Defendants' descriptions, statements, and representations about the Program to induce Plaintiff to enroll at UMKC constitute "advertisements" as defined by R.S.Mo. § 407.010(1).

92. The educational program UMKC offered constitutes merchandise under Section 407.010(4).

93. Defendants' advertising, offering for sale, and/or sale of merchandise constitutes "trade" or "commerce" as defined by R.S.Mo. § 407.010(7).

94. Plaintiff purchased merchandise, in the form of educational course work, programs, and services, for personal, family, or household purposes within the meaning of Section 407.025.

95. Section 407.020 prohibits unlawful actions whether committed before, during or after the sale.

96. Defendants engaged in a pattern and practice of using deception, fraud, false pretense, false promise, misrepresentation and/or unfair practice, and/or concealed, suppressed, or omitted a material fact in connection with their representations and practices, and engaged in a pattern and practice of unconscionable acts to take advantage of an unequal bargaining position, including without limitation:

(a) Requiring Plaintiff to retake Year 1 of the Program;

(b) Not counting courses toward Plaintiff's science grade point average;

(c) Requiring Plaintiff to take courses that did not count toward a biology degree;

(d) Not fully replacing grades in courses they promised would be replaced, particularly the Anatomy and Cell Biology courses;

(e) Refusing to release an accurate transcript;

(f) Making false statements as to the credit hours and requirements necessary to complete the Program;

(g) Making false statements as to the specific courses and requirements that would result in completion of the Program;

(h) Withdrawing credit for course work already completed;

(i) Requiring Plaintiff to pay for additional courses and requirements in order to complete the Program.

97. As a result of Defendants' actions, Plaintiff suffered an ascertainable loss of money or property.

98. The conduct of Defendants was outrageous because of its evil motives, and/or made with reckless disregard for the rights of Plaintiff, entitling them to an award of punitive damages.

## COUNT III
### Breach of Contract Against All Defendants

99. Plaintiff re-allege and incorporate as if fully set forth herein the paragraphs above.

100. Defendants entered into contract with Plaintiff, under which Defendants specifically promised Plaintiff that he would receive a degree following completion of courses and other requirements listed in the contracts.

101. In exchange, Plaintiff expended funds and time to complete course work and other requirements.

102. Mutual obligations arose pursuant to the parties' contracts.

103. Before Defendants breached the contracts, Plaintiff performed his obligations.

104. Defendants breached the agreement by changing the course work and other requirements necessary to complete the Program and obtain the degree.

105. Missouri law implies a covenant of good faith and fair dealing in every contract, including Defendants' contracts with Plaintiff to provide educational services, and award a degree completion of the coursework and other requirements listed in the contracts.

106. Defendants had a duty to exercise discretion in such a manner as to not evade the spirit of the transaction or so as to deny Plaintiff the expected benefit of the bargain.

107. Defendants breached the covenant of good faith and fair dealing by changing the terms for completing the Program.

108. The conduct of UMKC was outrageous because of its evil motives, and/or made with reckless disregard for the rights of Plaintiff, entitling him to an award of punitive damages.

109. As a direct and proximate result of UMKC's breaches of contract and covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at the time of trial.

## COUNT IV
### Promissory Estoppel Against All Defendants

110. Plaintiff re-allege and incorporate as if fully set forth herein the paragraphs above.

111. Defendants made specific promises to Plaintiff, including that Defendants would award a degree if Plaintiff enrolled and completed specific coursework and other requirements.

112. Plaintiff reasonably relied on Defendants' promises.

113. Defendants expected, or reasonably should have expected, Plaintiff' reliance.

114. Defendants will not honor its promises and an injustice has resulted as a result of UMKC's actions.

115. The conduct of Defendants was outrageous because of its evil motives, and/or made with reckless disregard for the rights of Plaintiff, entitling them to an award of punitive damages.

116. As a direct and proximate result of Defendants' breaches of its promises, Plaintiff has been damaged in an amount to be proven at the time of trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants for compensatory damages, including economic and non-economic losses; treble damages for Count I; punitive damages; attorneys' fees, incidental and

15

consequential damages, costs, and pre- and post-judgment interest and such further relief as deemed appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to trial by jury.

Respectfully submitted,

**DRZ Law, LLC**

/s/ Chris Dove
Christopher Dove    MO #64641
Daniel R. Zmijewski    MO #54675
9229 Ward Parkway, Suite 370
Kansas City, MO 64114
P: 816-333-4379
F: 816-523-5667
chris@drzlawfirm.com
dan@drzlawfirm.com

ATTORNEYS FOR PLAINTIFF