**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **JOSHUA CARTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 4:18-cv-00426-RK** |
| **v.** | ) | |
| | ) | |
| **THE CURATORS OF THE** | ) | |
| **UNIVERSITY OF MISSOURI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, Joshua Carter, who states and alleges as follows for his First Amended Complaint against Defendants:

**INTRODUCTION**

1.     UMKC, through its School of Medicine, offers a joint B.A./M.D. program that allows a student to obtain both an undergraduate degree and a medical degree after six years of study (the "Program").

2.     Students enrolled in the Program incur significant costs for tuition, fees, room and board, books, supplies, and other expenses.  Tuition alone can average over $25,000 a year.

3.     The Program accepts students straight out of high school or immediately after their freshman years of college.  Students concurrently take undergraduate and medical school classes and work in docent groups in hospitals learning how to provide care for patients.

4.     Plaintiff Josh Carter enrolled in and began the Program as a student.

5.     While Josh Carter was enrolled in the Program, one or more Defendants engaged in a scheme designed to require Josh Carter to pay tuition, fees, expenses, and costs above and beyond what he would normally pay to complete the six-year Program.

6. Specifically, one or more Defendants required Josh Carter to enter the Alternate Curriculum Pathway and repeat Year 1 of the Program in violation of the Program's own policies and procedures. By forcing Josh Carter into the Alternate Curriculum Pathway, Defendants were able to enroll another student in Josh Carter's "spot," enabling UMKC to collect double tuition, fees, expenses, and costs.

7. As part of this "Alternative Curriculum Pathway," Defendants required Josh Carter to take several high-level science courses. Defendants, however, subsequently refused to count this coursework toward Josh Carter's science-specific grade point average. As a result, Defendants informed Josh Carter that his science-specific grade point average was not high enough and that he would have to repeat Year 2 of the Program.

8. As part of this "Alternative Curriculum Pathway," Defendants also required Josh Carter to take biology courses that they knew would neither count toward earning an undergraduate degree nor toward earning a medical degree. Even after acknowledging that Josh Carter received **<u>no tangible benefit</u>** from this coursework, Defendants nevertheless insisted that Josh Carter complete the "Alternative Curriculum Pathway" as originally designed.

9. Now, despite charging him medical school tuition, Defendants have improperly categorized the medical school courses Josh Carter completed as undergraduate-level courses. Consequently, other academic programs will not admit Josh Carter because his transcript does not properly reflect his undergraduate-level grade point average or the academic level of the courses he completed.

10. Upon information and belief, Defendants actions were part of a scheme designed to force medical students to "extend" their educations and thereby generate additional revenue for the Program.

**PARTIES**

11.     At all times relevant to the allegations in this Petition, Plaintiff Joshua Carter was a student in the School of Medicine at the University of Missouri-Kansas City ("UMKC").

12.     UMKC is part of the University of Missouri school system and is a Missouri public institution of higher education created by statutes of the State of Missouri and governed by Defendant, the Curators of the University of Missouri.

13.     At all times relevant to the allegations in this Petition, Defendant George Harris, M.D. was the Assistant Dean Year 1 and 2 Medicine at UMKC.  Defendant Harris is named as a Defendant in both his individual and official capacity.

14.      At all times relevant to the allegations in this Petition, Defendant Cary Chelladurai was an Advisor for Year 1 and 2 medical students and/or the Manager of Student Affairs at UMKC.  Defendant Chelladurai is named as a Defendant in both her individual and official capacity.

15.     At all times relevant to the allegations in this Petition, Defendant Kristen Kleffner was Senior Education Team Coordinator for Year 1 and 2 medical students at UMKC. Defendant Kleffner is named as a Defendant in both her individual and official capacity.

**JURISDICTION AND VENUE**

16.     All the acts, conduct, and omissions of UMKC, which is located in Jackson County, was performed by its agents, representatives, and employees acting while in the course and scope of their agency or employment in Jackson County, Missouri, and accordingly, jurisdiction and venue are proper in this Court.

## **FACTUAL BACKGROUND**

*Plaintiff Successfully Completes Year 1 of the Medical Program*

17.     Plaintiff Joshua Carter enrolled in UMKC's six-year medical program ("the Program") in the fall of 2011.

18.     The Program's policies and procedures for evaluating medical students are forth in the Counsel on Evaluation's  "Policy Manual & Guidelines" (hereinafter "COE Manual"). The COE Manual identifies four (4) requirements for medical students to be promoted from "Year 1" to "Year 2" of the Program:

> "i.     Satisfactory completion of **two semesters** in Year 1, including the required courses listed below…
>
> ii.     Arts & Sciences:  at least 19 acceptable credit hours
>
> iii.    GPA:  Cumulative of at least 2.80 or higher
>
> iv.     Science GPA:  Cumulative of at least 2.80 or higher."

(COE Manual at pg. 18) (emphasis added).  *See also* (2011-2012 UMKC Medical Student Handbook at pg. 58) (hereinafter "Student Handbook") (listing the same four requirements for promotion to "Year 2").

19.     The COE Manual further provides that, to "satisfactorily complete" any required course, a medical student must earn a passing grade of a "C-" or higher.  (COE Manual at pg. 9.) *See also* (Student Handbook at pg. 58) (same).

20.     During the fall semester of 2011, Plaintiff Joshua Carter successfully completed 22.0 hours of coursework and maintained a 3.25 GPA.  Carter received a passing grade of a "C-" or higher in all his required classes.

4

21.     During the spring semester of 2012, Plaintiff Joshua Carter successfully completed 17.0 hours of coursework and maintained a 3.40 GPA.  Carter again received a passing grade of a "C-" or higher in all his required classes.

22.     During his first two semesters of medical school, Plaintiff Joshua Carter maintained both (1) a regular GPA and (2) a science GPA exceeding the minimum requirement of 2.80.

23.     Plaintiff Josh Carter, therefore, satisfied the requirements for promotion to "Year 2" listed in the COE Manual and reiterated in the Program's 2011-2012 Student handbook.  *See* (COE Manual at pg. 18); (Student Handbook at pg. 58).

24.     During his first year of medical school, Plaintiff Joshua Carter also excelled in his work outside of the classroom.  He finished the academic year ranked in the top 5% of his class for docent work and was elected President of his medical school class.

*The Alternative Curriculum Pathway*

25.     UMKC offers a "Year 1 Alternate Program" for students who, unlike Plaintiff Joshua Carter, "require additional time to successfully complete requirements for promotion" to Year 2.  (COE Manual at pg. 33.)  The COE Manual provides that a student may be placed in the "Year 1 Alternate Program" if any of the following occur:

(i)     "The student does not meet criteria for dismissal or promotion to Yr 2 **by May 31st of the first year of enrollment**" (COE Manual at pg. 33) (emphasis added);

(b)     "The student experiences academic difficulties, or earned a failing grade of "D (+/-)", "F", "WF", "No Credit", or "Fail" in a required course" (COE Manual at pg. 33); OR

(c)     "The student earns an insufficient cumulative science GPA for promotion" (COE Manual at pg. 33.)

5

26.     Plaintiff Joshua Carter satisfied the criteria for promotion to Year 2 of the Program "by May 31st of the first year of [his] enrollment."  *See supra* (Pl.'s First Am. Complaint at ¶¶ 21-24).

27.     Plaintiff Joshua Carter neither "experience[d] academic difficulties" nor "earned a failing grade...in a required course" during his first year of enrollment.  *See supra* (Pl.'s First Am. Complaint at ¶¶ 21-24).

28.     Plaintiff Joshua Carter had earned a sufficiently high science GPA during the first two semesters of medical school to be eligible for promotion.  *See supra* (Pl.'s First Am. Complaint at ¶¶ 21-24).

*When Plaintiff Failed a SECOND-YEAR Course, UMKC Inexplicably Required*
*Plaintiff Repeat the Entire FIRST-YEAR of the Program*

29.     In June of 2012, Plaintiff enrolled in classes for "Summer Semester Year 2."  *See* (Student Handbook at pg. 54) (a chart summarizing the Program's curriculum).

30.     During this summer semester of 2012, Plaintiff received a "D" in Cell Biology (while also earning passing grades in Elementary Organic Chemistry and a medical clinic).

31.     Both the Program's Student Handbook and the "Curriculum and Rotation Information" section of the Program's website list Cell Biology as a second-year course.  *See* (Student Handbook at pg. 54).

32.     Because Plaintiff was a Year 2 student when he failed Cell Biology, the Program's policies and procedures dictate that Plaintiff should have been placed on academic probation. (COE Manual at pg. 34.)  The COE Manual states that a student will be placed on "Yr. 2 Alternate Probation" if:

- "The student does not meet criteria for dismissal or promotion to Yr 3 by May 31st of the second year of enrollment";

6

- "The student experiences academic difficulties, or earned a failing grade of 'D', 'F', "WF", 'No Credit,' or 'Fail' in a required course"; OR

- "The student earns an insufficient cumulative science GPA for enrollment in the Human Structure Function series.'

(COE Manual at pg. 34.)

33.     The COE Manual, therefore, mandated that (1) Plaintiff be placed academic **<u>probation</u>** for failing Cell Biology but (2) otherwise allowed to continue his Year 2 coursework subject to a series of expressly-defined "stipulations."  (COE Manual at pg. 34.)

34.     Rather than placing Plaintiff on academic probation, UMKC administrators consciously disregarded COE guidelines and (falsely) informed Plaintiff that he must either (1) repeat his **<u>entire</u>** first-year of academic coursework or (2) withdraw from the Program.

35.     Specifically, in an email dated August 1, 2012, Defendant Kristen Kleffner falsely represented to Plaintiff that that the Committee on Evaluation "will need to design an alternate curriculum plan for the upcoming semesters" that would require Plaintiff to repeat significant portions of his first-year coursework.

36.     On the same day (*i.e.* August 1, 2012), Plaintiff informed Defendant Kleffner via email that the Program's policies and procedures dictate that second-year students should be placed on academic probation for failing a required course (rather than being forced to repeat the first-year curriculum):

> "…I have attached a PDF file showing how my schedule is currently planned out.  Since Cell Biology is not a prerequisite for any other courses that I would take this fall, and since Genetics and Biochemistry are going to be needed as well, **<u>I was able to add Cell Bio to my schedule without time conflicts or prerequisite issues</u>**.  **<u>In reviewing the UMKC handbook, the recent summer session is part of the SECOND year and not the first.  It therefore looks like the rules allow me to institute the above plan and there are no conflicting prerequisite issues.</u>**
>
> […]  I would ask to be given the chance to put the above plan into action before being required to enter an Alternate pathway.

Thank you for your help.

Sincerely,

Josh Carter."

Importantly, this email also placed Defendant Kleffner on notice that Plaintiff had an opening in his schedule that would allow him to re-take Cell Biology without unnecessarily extending his medical school education for another year.

37.     Plaintiff Joshua Carter forwarded a copy of this email to Defendant Chellandurai.

38.     On August 3, 2012, Defendant Chellandurai emailed a response to Plaintiff claiming that Plaintiff's proposed curriculum was "unrealistic and not approved." Defendant Chellandurai then falsely represented in this email that "failing a course **automatically** means you are a 7-year student." *C/f* (COE Manual at pg. 34) (stating that student who fail a second-year course will be placed on academic probation, rather than being forced to repeat the first-year curriculum).

39.     On August 7, 2012, Defendants Kleffner and Chellandurai emailed Plaintiff an "Alternative Curriculum Plan." This "Alternative Curriculum Plan" required Plaintiff to not only repeat Cell Biology (a second-year course), but also to repeat the Functional Anatomy course that he had already passed.

40.     This "Alternative Curriculum Plan" falsely represented to Plaintiff that both (1) the repeated Functional Anatomy course and (2) several elective biological courses (*i.e.* General Biology II, Histology, and General Parasitology) would count toward Plaintiff's science GPA.

41.     Upon receipt of this "Alternative Curriculum Plan," Plaintiff faxed a letter to the Assistant Dean of the Medical School, Dr. George Harris, expressing his concerns about being forced to repeat his **first-year** coursework.

8

42.    On August 7, 2012, Defendant Harris informed Plaintiff via email that he would "only sign the alternate curriculum plan as designed and sent you by…[Defendants] Kleffner and…Chelladurai."

43.    In a follow-up telephone conversation with Plaintiff's father on August 7, 2012, Defendant Harris falsely represented that (1) it was **necessary** for Plaintiff to repeat his first-year coursework under departmental guidelines and (2) this repeated coursework would help bolster Plaintiff's science GPA.

44.    Faced with a Hobson's choice between (1) extending his medical education for another year or (2) being dismissed from the Program with no undergraduate degree to fall back on, Plaintiff chose to extend his medical education for another.

*UMKC Required Joshua Carter to Take Specific Science Courses, but Refused To Count These Courses Toward His Science GPA*

45.    The "Alternate Curriculum Plan" designed by Defendants Kleffner and Chellandurai required Plaintiff to not only re-take Cell Biology, but to also complete several other high-level biology classes including: (1) General Biology II (with lab); (2) Histology (with lab); and (3) General Parasitology; and (4) Functional Anatomy (which Plaintiff had already passed).

46.    The CEO Manual specifically states that "[i]f a science course is repeated, only the final grade is used in the science GPA calculation (the initial grade earned in a repeated course will be dropped only from the cumulative science calculation)." (COE Manual at pg. 11.)

47.    Plaintiff Joshua Carter, therefore, reasonably anticipated that any grades he earned in his repeated Cell Biology and Functional Anatomy classes would be factored into his science GPA.

9

48. The "Alternative Curriculum Plan" that Defendants Kleffner and Chellandurai emailed to Plaintiff on August 7, 2011 similarly represented that Plaintiff's elective biology classes (*i.e.* General Biology II, Histology, and General Pathology) would be factored into his science GPA.

49. Plaintiff Joshua Carter, therefore, also reasonably anticipated that any grades he earned in his elective biology courses would be factored into his science GPA.

50. Plaintiff completed the "Alternative Curriculum Plan" in May of 2013. Over this three-semester timespan, Plaintiff earned an "A" in every course that he took.

51. On May 29, 2013, Plaintiff received an email from Defendant Kleffner congratulating him on earning a 4.0 GPA.

52. These congratulatory emails, however, proved to be short-lived.

53. Plaintiff Joshua Carter subsequently discovered that – contrary to the prior representations of the individual Defendants Kleffner, Chellandurai, and/or Harris – UMKC would not factor **any** of his additional coursework into his science GPA.

54. In a series of emails from February and March of 2013, Defendant Kleffner (1) initially promised to adjust Plaintiff's science GPA to reflect his new grade in Function Anatomy, then (2) changed positions shortly thereafter:

    (i)    On February 7, 2013, Defendant Kleffner sent an email to Plaintiff promising that "your GPA will be adjusted with the new grade [in Functional Anatomy] replacing the previous one earned..."

    (ii)    In this same February 7 email, Defendant Kleffner apologized to Plaintiff for "ha[ving] to be the guinea pig for me to learn this!"

    (iii)    On March 8, 2013, the Assistant Registrar of UMKC (*i.e.* Nicole Woolsey) sent Defendant Kleffner an email informing her that "[u]nfortunately,…[Plaintiff] must have earned a D+ or lower in the original class to qualify for the adjustment."

10

(iv) Shortly thereafter, Defendant Kleffner informed Plaintiff via email that he did not qualify for a grade adjustment in Functional Anatomy because his original grade was a "C" (rather than a "D+ or lower").

55. Similarly, on October 8, 2013, Defendant Kleffner left a voicemail message informing Plaintiff that his new grade in Cell Biology would no longer replace his old (failing) grade in GPA calculations "due to accreditation demands." Instead, the Program would **retroactively change** his science GPA to include the average of his two Cell Biology grades.

56. Most alarmingly, on April 29, 2013, Defendant Kleffner notified Plaintiff via email that his elective biology courses (*i.e.* General Biology II, Histology, and General Parasitology) would not only be omitted from his science GPA but would also no longer count toward his undergraduate degree in biology. Although Plaintiff would no longer receive **any tangible benefit** from this additional coursework, Defendant Kleffner nevertheless insisted that "upper level Chem/Bio course[s] [are] still part of your alternate plan" and must be completed.

57. As a direct and proximate result of the Program's broken promises, Plaintiff's science GPA remained perilously close to dropping below the Program's minimum requirement of 2.800 even though Plaintiff had earned straight "A's" for three consecutive semesters.

58. Plaintiff Josh Carter subsequently earned passing grades (*i.e.* "B's" and "C's") in all of his required courses during the Fall 2013 and Spring 2014 semesters. But on May 14, 2014, Defendant Kleffner informed Plaintiff that he would nevertheless be asked to either (1) repeat his second-year courses or (2) withdraw from the Program due to his (artificially) low science GPA.

59. But for Defendants' failure to factor Plaintiff's additional coursework into his science GPA, Plaintiff would have maintained a sufficiently-high GPA to remain in the medical Program.

11

*UMKC Required Joshua Carter to Take Specific Courses That Did Not Count Toward a Biology Undergraduate Degree*

60.     According to Program's 2011-2012 Student Handbook, students re-assigned to the Alternate Curriculum Pathway are required to "declare a major…in biology or chemistry…to strengthen their knowledge and study habits for the basic sciences." (Student Handbook at pg. 58.)

61.     When Plaintiff Joshua Carter entered the Alternate Curriculum Pathway, UMKC required him to enroll in several biology classes, including: (1) General Biology II; (2) Histology; (3) General Parasitology; (4) Cell Biology (repeat); and (5) Functional Anatomy (repeat).

62.     Defendants Kleffner, Chellandurai, and Harris each represented to Plaintiff via email and/or telephone that these biology courses would count toward earning a bachelor's degree. These representations included, but were not limited to, the following:

>       (a)     On August 7, 2012, Defendants Kleffner and Chellandurai emailed Plaintiff an "Alternative Curriculum Plan" representing that his "BA Degree Requirements [Will Be] Completed By: Year 4 Campus Semester."

>       (b)     On August 7, 2012, Defendant Harris spoke to Plaintiff's father on the telephone. During this telephone conversation, Defendant Harris represented that (1) Plaintiff's additional coursework would not only count toward an undergraduate degree, but also (2) bolster his science GPA within the medical Program.

63.     Based upon Defendants' false representations, Plaintiffs Joshua Carter believed that he had automatically declared a major in biology by entering the Alternate Curriculum Pathway. Plaintiff continued to operate under the (mistaken) assumption that he was a biology major for **<u>almost six months</u>** until he was unable to enroll in an upper-level, undergraduate Histology class.

12

64. On March 28, 2013, Plaintiff Joshua Carter discovered that he had already "maxed out" the number of biology credits that he could count toward an undergraduate degree in Biology or toward a BLA degree.

65. On April 29, 2013, Defendant Kleffner sent an email to Plaintiff acknowledging that his biology courses would no longer count towards **any** sort of degree (whether undergraduate or medical). But Defendant Kleffner nevertheless insisted that Plaintiff continue to follow his "Alternate Curriculum Plan" as originally written.

66. UMKC administrators, therefore, actively prevented Plaintiff Joshua Carter from enrolling in replacement courses that would count toward an undergraduate biology degree and/or medical degree.

*UMKC Refuses to Release a Complete and Accurate Transcript, Preventing Joshua Carter From Enrolling in Another Educational Program*

67. In December of 2014, Plaintiff Joshua Carter withdrew from the medical Program and graduated from UMKC with a Bachelor of Liberal Arts degree.

68. According to the UMKC Registration and Records webpage, student transcript **will** contain "separate grade point averages for undergraduate, graduate, medicine, dentistry, law and pharmacy programs."

69. On February 9, 2016, Plaintiff Joshua Carter sent a letter to UMKC requesting a transcript containing separate grade point averages for (1) his undergraduate coursework and (2) his medical school coursework.

70. On June 24, 2016, Plaintiff received a letter from the Registrar of UMKC, Mr. Douglas Swink, denying his request for separate grade point average calculations. To justify this refusal, Mr. Swink (implausibly) claimed that it was "impossible to change undergraduate

13

[medical school] credits" to graduate-level credits without "[jeopardizing] the integrity of student records while enforcing academic policies."

71.     In the transcript that UMKC subsequently released to Plaintiff Joshua Carter, all of Plaintiff's completed coursework is categorized as "undergraduate"-level.

72.     In the transcript that UMKC subsequently released to Plaintiff Joshua Carter, UMKC refused to categorize **any** of the medical school courses that Joshua Carter completed as medical school or graduate level courses.

73.     In the transcript that UMKC subsequently released to Plaintiff Joshua Carter, UMKC did not compute separate undergraduate and medical/graduate school grade point averages.

74.     As a result, Joshua Carter's undergraduate grade point average is lower than it would be if the grades for the medical/graduate courses were computed separately.

75.     As a result, other academic programs have refused to admit Joshua Carter because the transcripts UMKC has released do not accurately reflect his grade point average and the academic level of the courses he has completed.

## COUNT I
### Violation of the RICO Act, 18 U.S.C. §§ 1961-1968
**(Against Defendants George Harris M.D., Cary Chelladurai, and Kristen Kleffner)**

76.     Plaintiff re-alleges and incorporates as if fully set forth herein the paragraphs above.

77.     Plaintiff and Defendants Harris, Chelladurai, and Kleffner are "persons," as that that term is defined in 18 U.S.C. §§1961(3) and 1962(d).

14

78.     For the purposes of this claim, the RICO "enterprise" is a legal entity and/or association in fact enterprise, as those terms are defined in 18 U.S.C. § 1961(4), consisting of the University of Missouri-Kansas City School of Medicine ("UMKC").

79.     The enterprise is separate and distinct from the individual Defendants Harris, Chelladurai, and Kleffner because UMKC is a legal entity with different rights and responsibilities from Defendants Harris, Chelladurai, and Kleffner, who are natural persons.

80.     At all relevant times, the enterprise was engaged in and its activities affected interstate commerce. Specifically, UMKC used electronic communications, including but not limited to its website, to advertise its six-year medical program to prospective out-of-state students. Further, UMKC received electronic tuition payments from out-of-state students like Plaintiff Joshua Carter and used email to communicate with such students.

81.     The individual Defendants constituting the Enterprise (*i.e.* the UMKC School of Medicine) associated for the common purpose of enriching the six-year medical Program by falsely representing that (1) departmental guidelines **required** students like Plaintiff Joshua Carter to repeat an entire **year** of medical school after receiving an unsatisfactory grade in a single course and (2) that any coursework repeated during this "extended" year would count toward earning an undergraduate degree and/or bolster the student's science GPA.

82.     Defendants Harris, Chelladurai, and Kleffner committed acts of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 when they used electronic communications and/or mail to make fraudulent representations to Plaintiff Joshua Carter concerning the "extension" his medical school education including, but not limited to, the following:

> (a)     On or about the Fall semester of 2011, UMKC mailed Plaintiff Joshua Carter a copy of the six-year medical program's 2011-2012 Student Handbook. This Handbook, in turn, falsely identified four (4) requirements that students must satisfy for promotion from Year 1 to Year

15

2 of the Program. *See* (Student Handbook at pg. 58) (listing the same four requirements for promotion to "Year 2").

(b)    In an email dated August 1, 2012, Defendant Kristen Kleffner falsely represented to Plaintiff that because he had failed a **second-year course** (i.e. Cell Biology), the Committee on Evaluation "will need to design an alternate curriculum plan for the upcoming semesters" that would require Plaintiff to repeat significant portions of his **first-year coursework**.

(c)    In an email dated August 3, 2012, Defendant Chellandurai falsely represented to Plaintiff that "failing a course **automatically** means you are a 7-year student." *C/f* (COE Manual at pg. 34) (stating that student who fail a second-year course will be placed on academic probation, rather than being forced to repeat the first-year curriculum).

(d)    In an email dated August 7, 2012, Defendants Kleffner and Chellandurai sent Plaintiff a copy of an "Alternative Curriculum Plan" what would require him to repeat substantial portions of his first-year coursework. This "Alternative Curriculum Plan," in turn, falsely represented to Plaintiff that both (1) his Functional Anatomy course and (2) several elective biological courses (*i.e.* General Biology II, Histology, and General Parasitology) would count toward Plaintiff's science GPA.

(e)    In a telephone conversation on August 7, 2012, Defendant Harris falsely represented to Plaintiff's father that (1) it was **necessary** for Plaintiff to repeat his first-year coursework under departmental guidelines and (2) this repeated coursework would help bolster Plaintiff's science GPA.

(f)    In an email dated February 7, 2013, Defendant Kleffner falsely represented to Plaintiff that "your GPA will be adjusted with the new grade [in Functional Anatomy] replacing the previous one earned..."

(g)    From 2011 – 2016, the UMKC Registration and Records falsely represented that student transcripts **will** contain "separate grade point averages for undergraduate, graduate, medicine, dentistry, law and pharmacy programs."

(h)    In a letter mailed to Plaintiff on June 26, 2016, UMKC falsely represented that it would be impossible to list separate undergraduate- and graduate-level GPAs on Plaintiff's transcript without "[jeopardizing] the integrity of student records."

83.    These predicate acts of wire and mail fraud constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

16

84.    Upon information and belief, Defendants Harris, Chelladurai, and Kleffner intentionally and/or willfully made these false representations as part of a scheme to force medical students like Plaintiff Joshua Carter to (1) unnecessarily "extend" their medical educations and (2) consequently spend additional sums of money on tuition and fees.

85.    It was reasonably foreseeable to Defendants Harris, Chelladurai, and Kleffner that these mails and/or wires would be used in furtherance of their scheme to generate additional revenue for the six-year medical Program, and the mails and/or wires were in fact used to further and execute the scheme.

86.    Each mailing and each email constitutes a separate act of mail or wire fraud.

87.    Upon information and belief, Defendants Harris, Chelladurai, and Kleffner's fraudulent acts toward Plaintiff were consistent with and a continuation of actions toward other prior and current students in the Program aimed at the common purpose and with the goal of defrauding such students by making them repeat courses and academic years, resulting them paying more for tuition, costs, and fees.

88.    As a direct and proximate result of Defendants Harris, Chelladurai, and Kleffner's violations of 18 U.S.C. § 1962, Plaintiff has been injured in his business or property.

89.    Under the provisions of 18 U.S.C. § 1964(c), Defendants Harris, Chelladurai, and Kleffner are liable to Plaintiff for three times the damages sustained, plus costs and reasonable attorneys' fees.

## COUNT II
### Violation of the Missouri Merchandising Practices Act Against All Defendants

90.    Plaintiff re-alleges and incorporates as if fully set forth herein the paragraphs above.

91. Defendants' descriptions, statements, and representations about the Program to induce Plaintiff to enroll at UMKC constitute "advertisements" as defined by R.S.Mo. § 407.010(1).

92. The educational program UMKC offered constitutes merchandise under Section 407.010(4).

93. Defendants' advertising, offering for sale, and/or sale of merchandise constitutes "trade" or "commerce" as defined by R.S.Mo. § 407.010(7).

94. Plaintiff purchased merchandise, in the form of educational course work, programs, and services, for personal, family, or household purposes within the meaning of Section 407.025.

95. Section 407.020 prohibits unlawful actions whether committed before, during or after the sale.

96. Defendants engaged in the following "deceptive acts and practices" and/or "unconscionable acts" in connection with Plaintiff Joshua Carter's decision to "extend" his medical school education for an additional year:

> (a) In an email dated August 1, 2012, Defendant Kleffner falsely represented to Plaintiff that because he had failed a **second-year course** (i.e. Cell Biology), the Committee on Evaluation "will need to design an alternate curriculum plan for the upcoming semesters" that would require Plaintiff to repeat significant portions of his **first-year coursework**. *C/f* (COE Manual at pg. 34) (stating that student who fail a second-year course will be placed on academic probation, rather than being forced to repeat the first-year curriculum).
>
> (b) In an email dated August 3, 2012, Defendant Chellandurai falsely represented to Plaintiff that "failing a course **automatically** means you are a 7-year student." *C/f* (COE Manual at pg. 34) (stating that student who fail a second-year course will be placed on academic probation, rather than being forced to repeat the first-year curriculum).
>
> (c) In an email dated August 7, 2012, Defendant Harris rejected Plaintiff's proposal to retake Cell Biology without "extending" his medical school

18

education for a full year. Dr. Harris' position left Plaintiff with a Hobson's choice between (1) paying an additional year's worth of medical school tuition or (2) being dismissed from the Program with no undergraduate degree to fall back on.

(d) The "Alternative Curriculum Plan" designed by Defendants Kleffner and Chellandurai falsely represented that any biology course(s) Plaintiff took during his "extended" year would count toward his science GPA.

(e) In a telephone conversation on August 7, 2012, Defendant Harris similarly represented to Plaintiff's father that "extending" would be beneficial to Plaintiff because any additional biology course(s) Plaintiff took during his "extended" year would count toward his science GPA.

(i) But in an email dated March 8, 2013, Defendant Kleffner informed Plaintiff via email that he did **_not_** qualify for a grade adjustment in Functional Anatomy because his original grade was a "C" (rather than a "D+ or lower).

(f) Similarly, on October 8, 2013, Defendant Kleffner left a voicemail message informing Plaintiff that his new grade in Cell Biology would no longer replace his old (failing) grade in GPA calculations "due to accreditation demands." Instead, the Program would **_retroactively change_** his science GPA to include the average of his two Cell Biology grades.

(g) In an email dated April 29, 2013, Defendant Kleffner notified Plaintiff via email that even though his elective biology courses (*i.e.* General Biology II, Histology, and General Parasitology) would no longer count toward his undergraduate degree, Plaintiff must nevertheless complete these science courses for which he would receive no **_any tangible benefit_**.

(h) From 2011 – 2016, the UMKC Registration and Records falsely represented that student transcripts **_will_** contain "separate grade point averages for undergraduate, graduate, medicine, dentistry, law and pharmacy programs."

(i) In a letter mailed to Plaintiff on June 26, 2016, UMKC falsely represented that it would be impossible to list separate undergraduate- and graduate-level GPAs on Plaintiff's transcript without "[jeopardizing] the integrity of student records."

97. As a direct and proximate result of Defendants' deceptive and/or unconscionable acts, Plaintiff suffered an ascertainable loss of money or property.

98.     The conduct of Defendants was outrageous because of its evil motives, and/or made with reckless disregard for the rights of Plaintiff, entitling them to an award of punitive damages.

## COUNT III
### Breach of Contract Against All Defendants

99.     Plaintiff re-allege and incorporate as if fully set forth herein the paragraphs above.

100.    Defendants entered into contract with Plaintiff, under which Defendants specifically promised Plaintiff that he would receive a degree following completion of courses and other requirements listed in the contracts.

101.    In exchange, Plaintiff expended funds and time to complete course work and other requirements.

102.    Mutual obligations arose pursuant to the parties' contracts.

103.    Before Defendants breached the contracts, Plaintiff performed his obligations.

104.    Defendants breached the agreement by changing the course work and other requirements necessary to complete the Program and obtain the degree.

105.    Missouri law implies a covenant of good faith and fair dealing in every contract, including Defendants' contracts with Plaintiff to provide educational services, and award a degree completion of the coursework and other requirements listed in the contracts.

106.    Defendants had a duty to exercise discretion in such a manner as to not evade the spirit of the transaction or so as to deny Plaintiff the expected benefit of the bargain.

107.    Defendants breached the covenant of good faith and fair dealing by changing the terms for completing the Program.

108.    The conduct of UMKC was outrageous because of its evil motives, and/or made with reckless disregard for the rights of Plaintiff, entitling him to an award of punitive damages.

109.     As a direct and proximate result of UMKC's breaches of contract and covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at the time of trial.

## COUNT IV
## Promissory Estoppel Against All Defendants

110.     Plaintiff re-allege and incorporate as if fully set forth herein the paragraphs above.

111.     Defendants made specific promises to Plaintiff, including that Defendants would award a degree if Plaintiff enrolled and completed specific coursework and other requirements.

112.     Plaintiff reasonably relied on Defendants' promises.

113.     Defendants expected, or reasonably should have expected, Plaintiff' reliance.

114.     Defendants will not honor its promises and an injustice has resulted as a result of UMKC's actions.

115.     The conduct of Defendants was outrageous because of its evil motives, and/or made with reckless disregard for the rights of Plaintiff, entitling them to an award of punitive damages.

116.     As a direct and proximate result of Defendants' breaches of its promises, Plaintiff has been damaged in an amount to be proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants for compensatory damages, including economic and non-economic losses; treble damages for Count I; punitive damages; attorneys' fees, incidental and consequential damages, costs, and pre- and post-judgment interest and such further relief as deemed appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to trial by jury.

Respectfully submitted,

**DRZ Law, LLC**

/s/ Chris Dove
Christopher Dove      MO #64641
Daniel R. Zmijewski     MO #54675
9229 Ward Parkway, Suite 370
Kansas City, MO 64114
P: 816-333-4379
F: 816-523-5667
chris@drzlawfirm.com
dan@drzlawfirm.com

ATTORNEYS FOR PLAINTIFF

## Certificate of Service

I certify that on August 24, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to Nicholas Beydler, Attorneys for Defendants.

/s/ Chris Dove

22